■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EUGENE JIMENEZ, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered October 23, 1974, convicting him of criminal sale of a controlled substance in the third degree, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial granted. Defendant's conviction arose out of his alleged sale of three tinfoils of cocaine to an undercover policeman on January 11, 1974. The People's case rested primarily on the testimony of the undercover officer. The officer testified that he had gone to a restaurant with an informant and stood at a counter while the informant went to the back of the restaurant. The latter returned to the counter and informed the officer that he had spoken to someone who "had something." The officer then went to the rear of the restaurant, a distance

of about 45 feet, where he met a man whom he identified as the defendant. He did not know the defendant's name and had not dealt with him before. Nevertheless, according to the officer, the following conversation immediately transpired: "I asked the defendant what was happening. He says, all right. I said, I heard you got something. He said dimes. I said, how is it? He said it's all right." The officer agreed to the price, took out $30 and gave it to defendant. Defendant then allegedly took out three tinfoils and gave them to the officer. On the evening of March 15, 1974 another police officer, relying on a description given by the informant, arrested the defendant. Defendant testified on his own behalf. He admitted that he had been in the restaurant on the evening of January 11, 1974. However, it was his contention that an old friend, Dixon, introduced the officer to him and told him that they were "looking for some cocaine". Defendant told them "that I don't deal with drugs anymore" and was trying to go straight. After being pressed by Dixon, who was an old friend, defendant disclosed that there was somebody he could ask on Dixon's behalf. Defendant then approached a man named Breeze, who confirmed that he had cocaine to sell. According to defendant, he then went over to Dixon and the officer, took money from them, went over to Breeze and received three bags in return. Defendant went back to Dixon and the undercover officer and gave them the bags. Defendant testified that he did not take any part of the cocaine for himself and had not profited from the sale. It was defendant's position, therefore, that as an agent for the buyer, he could not be convicted for the sale of cocaine. In view of the conflict between the undercover officer's testimony and the agency defense interposed by the defendant, the People's case could hardly be described as overwhelming. Moreover, the undercover officer's credibility was itself subject to serious attack during the trial. It was adduced during the trial that at defendant's arraignment, the undercover officer, with the co-operation of court personnel and the arresting officer, positioned himself behind a partially opened door behind the Judge's bench, but could not identify the defendant until he went to the holding pens later, where he was able to identify the defendant from among several other inmates. The defense called the Legal Aid attorney who had represented defendant at the arraignment. He testified at the trial that the arresting officer was sitting next to defendant in the holding pen when the undercover officer made his identification. During colloquy, defense counsel made it clear that the Legal Aid attorney's testimony was meant to impeach the undercover officer's credibility by showing that his account of the holding pen identification was inconsistent with what had really happened and was not meant to raise a defense of mistaken identity. Finally, the People produced a rebuttal witness, the very same Dixon mentioned by defendant in his testimony. However, Dixon's testimony was as helpful to defendant as it was to the People. Dixon testified that after he and the officer entered the restaurant, and while the undercover officer was only four feet away, he asked defendant "who had anything", since he, Dixon, "was looking to get high". According to Dixon, defendant said that "there was smoke and cocaine in the place" and that "a third party" might be able to help. Defendant told Dixon to wait and that he "would see what he could do." Dixon reported this conversation to the undercover officer, who then had a private conversation with defendant. Clearly, Dixon's rebuttal testimony tended to support defendant's testimony that he did not have any drugs on him but had to secure them from another person as a favor to Dixon, a version of the occurrence which differed from that of the undercover officer. In the light of all of this testimony, it is our view that the prosecutor's

remarks during summation exceeded the bounds of fair comment and constituted reversible error. During the summation, the prosecutor improperly distorted defendant's testimony and mocked his claimed sympathy for Dixon by stating that "defendant says * * * don't blame me. They pushed me into it" and by comparing defendant's agency defense to a stranger's sudden request to a jury for "six undershirts" to replace a ripped one (see *People v Jones,* 47 AD2d 761; *People v Johnston,* 47 AD2d 897). The prosecutor also improperly deprecated the defense by stating that "the whole defense changed in the middle" from one of mistaken identity to that of agency (see *People v Johnston, supra; People v Morales,* 53 AD2d 517). Finally, the prosecutor made numerous remarks which improperly usurped the role of the Judge and distorted the real thrust of the defendant's case. After repeating that defendant's possession and passing of the three tinfoils was "undisputed", the prosecutor stated to the jury: "You must convict the defendant at least of the mere possession." Despite defense counsel's objection to this remark, which was sustained, the prosecutor continued in this vein by stating: "He was part and parcel of whoever was holding those drugs, whether it was somebody holding them in the back or whether he had them concealed under the table in the back. He had to go get them. The People don't have to prove that." The prosecutor immediately followed these remarks with a statement that all the People had to prove was that defendant knowingly passed drugs. Accordingly, a new trial must be granted to the defendant. Damiani, J. P., Shapiro, Hawkins, Suozzi and O'Connor, JJ., concur.